# Bixler *versus* Saylor.

1. An exchange of real estate has a warranty in law incident to it, giving a re-entry as well as a recovery in value.

2. To make such assurance, it is indispensable that the word "exchange" should be used.

3. An exchange of chattels has not the same effect.

4. There is incident to an exchange of chattels an implied warranty of title and on a breach a recovery in damages.

5. When one of the parties knows he has no title, it is a fraudulent affirmation which taints the transaction and enables the other to avoid it and reclaim his property.

6. Saylor exchanged horses with Drum, knowing that Drum had stolen the horse. Bixler, with the same knowledge, bought Saylor's horse from Drum. The owner of the stolen horse took it from Saylor; he being *in pari delicto* with Bixler could not recover from him.

7. The maxim, *In pari delicto melior est conditio possidentis*, applied.

March 9th 1871. Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ. WILLIAMS, J., at Nisi Prius.

Error to the Court of Common Pleas of *Schuylkill county:* Of January Term 1871: No. 84.

This was an action of replevin brought September 5th 1865, by William Saylor against Peter Bixler for a horse, saddle and bridle.

[Bixler v. Saylor.]

One Drumheller stole a horse from a Mr. Bressler, which he afterwards "traded" to the plaintiff for another horse; the defendant afterwards bought from Drumheller the horse which Drumheller had received from the plaintiff in the exchange. There was evidence that when the plaintiff traded with Drumheller he knew or had reason to believe that the horse he got had been stolen; there was also evidence that when the defendant bought from Drumheller he knew or had reason to believe that the horse he got from Drumheller had been exchanged for the one stolen from Bressler. Bressler afterwards took his horse from the plaintiff, and the plaintiff brought this replevin to recover his horse from the defendant, on the ground that the defendant knew it had been taken in exchange for the stolen horse.

The defendant on the trial in the court below submitted, amongst others, the following points:—

"3. Although the jury believe that the plaintiff voluntarily parted with his property under such circumstances of fraud as would entitle him to recover from the fraudulent vendor, but with notice of the fraud, and that the defendant is a bonâ fide purchaser for value, though with like notice, their verdict must be for the defendant.

"4. If the jury believe the plaintiff traded with Drumheller after notice that Drumheller did not own the horse, or that he had reasonable grounds to believe the horse was not Drumheller's, he (the plaintiff) took upon himself the risk of the fraud, and their verdict should be for the defendant."

In answer to the points, the court (Ryan, P. J.) said:—

* * * "The defendant has asked us to charge upon several points and we have sufficiently affirmed all but the third and fourth, which in substance assert that if the trade between Saylor and Drumheller was made under such circumstances of fraud as would entitle the plaintiff to recover from the fraudulent vendor, yet if the defendant is an innocent purchaser for value, though with notice of the fraud, the plaintiff cannot recover against defendant. This we cannot say, for we do not understand upon what principle the plaintiff can be held responsible for acts which do not induce the defendant here to purchase the horse.

"It is true that it was talked around the time of the exchange between Drumheller and Saylor, that the horse and buggy belonged to Bressler; but Drumheller said that it was not stolen property, but his own. Saylor took Drumheller's word and made the exchange.

"Now, if Bixler had stood by and heard this trade and afterwards made this purchase from Drumheller, nevertheless if he knew, before his purchase from Drumheller, that Drumheller had fraudulently obtained the horse from Saylor, Bixler took no better title than Drumheller had. The fact that Saylor parted volun-

[Bixler *v.* Saylor.]

tarily with his horse under the circumstances of fraud, no right·
of property would pass as against Saylor and Drumheller, or any
one having notice of the fraud."

The verdict was for the plaintiff for $150.

The defendant took a writ of error, assigning for error, in addi-
tion to others, the answers to his 3d and 4th points.

*W. R. Smith* (with whom was *Seth W. Geer*), for plaintiff in
error.—When a loss is to fall on one of two innocent persons, he
who occasioned it must bear it: Robinson *v.* Justice, 2 Penna. Rep.
22; Beaupland *v.* McKeen, 4 Casey 131; Railroad *v.* Norton, 12
Harris 469.   A party may lose but cannot gain by his fraud:
Arrison *v.* Harmstead, 2 Barr 194.

*L. Bartholomew* (with whom was *M. Strouse*), for defendant in
error, cited Sinclair *v.* Healy, 4 Wright 417; Green *v.* Hum-
phry, 14 Id. 212.

The opinion of the court was delivered, March 20th 1871, by
SHARSWOOD, J.—An exchange of real estate has a warranty
in law incident to it; a condition to give the party a re-entry as
well as a warranty to enable him to vouch and recover over in
value.   To make an assurance of that character, it is indispensable
that the word *excambium*, exchange, should be employed: Dean
*v.* Shelly, 7 P. F. Smith 427.   An exchange of chattels has no
such legal effect.   It is a mutual bargain and sale, to which there
is incident an implied warranty of title, with the right, in case of
breach, to recover in damages.

When, however, one of the parties to the contract acts malâ
fide, knows that he has no title to the article he gives in exchange,
it is a false and fraudulent affirmation on his part which taints the
transaction, and puts it in the power of the other party to avoid
it and reclaim his property.

There was evidence in this case from which the jury might
have drawn the inference that when Saylor made the trade with
Drumheller, he knew, or had reason to believe, that the horse he
received had been stolen from Bressler.   With knowledge of this
fact he made the exchange.   Had this not been so it would have
been a fraud upon him, which would have authorized him to
rescind the contract or treat it as void, and recover the horse he
had given in exchange from Drumheller, or any person who had
purchased from him with notice of the fraud.   But if he knew
the fact, how can he be said to have been defrauded in the ex-
change?   *Volenti non fit injuria.*   For what appeared to him to
be a sufficient reason, he determined to run the risk of the bar-
gain, and he therefore parted with the property of his horse to
Drumheller.   When Bressler reclaimed from him the stolen horse

[Bixler v. Saylor.]

he had received, his remedy against Drumheller was an action on the implied warranty of title to recover damages. He could not sue for the specific recovery of the horse he had given in exchange, as there was nothing which lay in his mouth to set up in avoidance of that transaction. If there was a fraud, he was *particeps fraudis*—he was a receiver of stolen goods with knowledge. It follows logically and necessarily, that if the jury found such knowledge, Saylor could not recover the animal from Bixler to whom Drumheller had sold it, even if Bixler also knew that the horse Saylor received was Bressler's horse. *In pari delicto potior est conditio possidentis.* We think there was error in the refusal of the court below to affirm the defendant's 3d and 4th points, and in answering as they did.

Judgment reversed, and *venire facias de novo* awarded.